Mr. Chief Justice, and may it please the Court, formality is indeed essential to testimonial utterance. So said this Court in Davis, which dealt with two related situations, on-the-scene questioning by police officers and questions by 9-1-1 operators. This Court noted that such questioning may often lack the formality essential to testimonial utterance, as officers called to investigate need to know whom they are dealing with in order to assess a situation, the threat to themselves, and the potential danger to possible victims. The question here is whether those same assessing questions, what happened, who did it, where did it happen, asked by police officers who, upon receiving a radio report of a man shot, found a wounded man lying on the ground next to a car at a gas station, bleeding, visibly in pain, and were made in a formal context sufficiently similar to a magisterial examination so that the answers by the dying victim are testimonial. Roberts Well, it can't all be the formality of the context. I mean, if the police came in and said, well, has this person, Rick, I guess, sold you drugs before, what was the quantity and all those sorts of questions, the answers to that would be testimonial despite the same lack of formality. Harrington Which is where the ongoing emergency test from Davis comes into play. The questions need to be, the primary purpose needs to be to meet an ongoing emergency. So assessing the risk, assessing the danger to others, and any questions beyond that could arguably be testimonial while those others are not. Scalia Forget about formality, in other words. Formality or no formality has nothing to do with it. Harrington Well, under Davis you said that was how you tested formality. If the Davis test is a gauge of formality, if there are questions that respond to ongoing emergency, then this Court has said that that is an indicator that it lacks the formality. Ginsburg How do we tell that? Because it seems to me here, if you want to know what happened, you'd ask the very same questions. You're saying the questions are relevant also to securing the situation. But what different questions would you ask if you wanted to find out what happened, what was the past, what were the past events? I mean, I'm trying to understand how you take these questions and say we can put a label on them here that says, oh, this is to control an emergency situation, versus we want to know what happened historically. Harrington Well, I think that what you have to do is look at the – I mean, obviously things can have dual purposes and often will. You need to look at the primary purpose here. And you said in Davis it's an objective. What would an objective person be doing? Sotomayor But whose primary purpose is it? I mean, the victim here knew that the incident hadn't happened there. There was nothing he had to share with the police because they could see he was bleeding from his stomach and he had been shot. He apparently didn't fear any threat or there doesn't seem to be any circumstances suggesting an immediate threat to him. He had driven away. Rick didn't know where he had gone. So what's the ongoing emergency to the victim? Sotomayor Well, I think here, which is why in Davis you said it's the primary purpose of the questioning, is what you look at in Davis. And we're not asking you to overrule that. Sotomayor Well, wait a minute. What is the primary? Isn't there a footnote that says the primary purpose of the declarant is what's at issue? That is what it says. Sotomayor  It's the purpose of the declarant, not of the question. Sotomayor But the formality indicators that the Court delineated, David, did not include whether the answers to the questions were for the purpose of establishing past events, but whether the primary purpose of the questions were for those ends. The question is one of context, not content. As you noticed, as you said in Crawford. Sotomayor Well, in Davis the issue is why was the declarant talking? What you were trying to do was to figure out whether the declarant was seeking help or attempting to get someone arrested. That's how I read the situation. The questions provide a context for that. Are you seeking immediate ongoing help, or are you talking about an event attempting to get the police to intercede and arrest the person? Isn't that a fair reading of that case? Yes. And in Davis you said also that there becomes a point where courts can tell when the questioning takes on a different tone and the answers might become testimonial. When the questioning seeks the answers that go beyond meeting the emergency, then courts can properly find there's a point where the non-testimonial statements end and the testimonial statements. Alito In a situation like this, do you think it's meaningful to ask what the primary purpose of the victim was when he responded to the police and said, who shot him? You have a man who's just been shot. He has a wound that's going to turn out to be fatal. And he's lying there on the ground bleeding profusely, and he says, my primary purpose in saying this is so that they can respond to an ongoing emergency. No, but I also have the purpose of giving them information that could be used at trial, but it's a little less — that's a little bit less my purpose than responding to the ongoing emergency. It seems like it's totally artificial. Yes. And I think it — any time you ask the courts to delve into the subjective intent of someone who is not present and cannot testify and cannot tell you, it necessarily complicates things. And I think it takes away from the response. What possible response to an ongoing emergency could he have had in mind? What possible response to an ongoing emergency? He was bleeding to death, and he could have said, you know, I'm bleeding to death. Now, that statement would be, you know, suggesting an ongoing emergency. But giving the name of the person who shot him, where he was shot, what does that have anything — how does that have anything to do with an ongoing emergency? The police, upon responding to the scene, don't know that the emergency is limited to that person. But he does. But he does. Which is why you have to look at the entire context. He knows that his — that the person that shot him is nowhere near there. He knows that he drove, what, how far away was it? Six blocks or a good distance from where the shooter was. He knows all of that. The only reason he could be giving the name of the person who shot him is so that person could be apprehended and punished. And yet that subjective mindset doesn't affect the formality, doesn't change the fact that this is an informal situation. You don't have to — Ginsburg. Suppose he had survived. Suppose Covington had survived instead of died. And then the prosecutor says, I want to introduce this evidence against Bryant. Would you say that, yes, it's non-testimonial, so it comes in? He would have to be unavailable for it to come in. But why, if it's non-testimonial? Under the way the current jurisprudence is, he would have to be unavailable. If it's not testimony, I do not think it would offend the Confrontation Clause of Written Assignment. Ginsburg. You said it's non — you're typing it non-testimonial. It goes to emergency situation. So I'm saying, will that carry over to the man survives and the prosecutor says, I don't need to put him on the stand so he can be cross-examined. I've got non-testimonial evidence that I could put in. Would it become testimonial, then, if he survived? No. I don't think it would change the nature of what happened at the time. I do think, though, that is why we have said the Confrontation Clause is not some sort of superhearsay rule, and we will allow the government to do it. But then your answer is, we've typed it as non-testimonial. In my trial scenario, it would be non-testimonial. It comes in. As long as it was not somehow barred by the rules of hearsay, which I believe it would be. Roberts. I'm confused of what Davis focuses our inquiry on. Is it the purpose of the interrogators, or is it the purpose of the declarants? We say these statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events. The focus seems to be on the purpose of the interrogation, which seems to be a question of what the police thought, not what the person dying thought. That's correct. And I understand there is the footnote stating that, obviously, the declarant  If there were no declarant statements, it wouldn't be. No, I mean, yeah, and then what the footnote, I'm sorry to interrupt you, but what the footnote says is, in the final analysis, it's the declarant statements, not the interrogator's question, that the Confrontation Clause requires us to evaluate. So which, I guess, which is it? Well, I think what happens is the interrogator's statements are not what are going to be determined to be testimonial or non-testimonial. They provide a glimpse into the context, so we can determine whether those statements that are at issue are testimonial or non-testimonial. They are one way to determine the formality of the situation. One way to evaluate those statements is what they are made in response to. If they are made in response to a certain type of police inquiry, they are more likely to be testimonial. And another kind, you know, are you dying, they are more likely not to be testimonial. But it is ultimately the statements that we have to evaluate whether they are testimonial or not.  But as you say, Well, then how does that apply? The officer says, what happened? And the declarant says, Rick shot me. Now, is that testimonial or not? Because the declarant knows he's 6 miles away, it's not going to help them solve an emergency, but the police don't know that. Right. Which is why I think you look at the purpose of the questioning here to respond to an ongoing emergency. The police don't know. Well, if it was an emergency, he wouldn't have asked what happened. He would ask what is happening. I don't To ask what happened is to ask the declarant to describe past events, which is testimonial. I don't think that you can make that kind of right-line rule. I think here when you have a man bleeding out on a sidewalk and you don't know is there an assailant behind him, is there, are there victims somewhere else, is, you know, this a wanted felon, I think that there is an ongoing emergency until you can determine And you do not know if the man is running amok and threatening to shoot other people or he said if he's drunk, if he's on a rampage, if it's a, if it's a college campus and it's a, it's a sniper, you just don't know. Right. And if you're worried about that, do you run immediately over to the person lying on the ground or do you examine the gas station first, rather than expose yourself to the, to the shooter that you think is still in the gas station? The behavior of the police here gave no indication that they thought they were in danger immediately and were interrogating this person in order to assess the danger to them. That wasn't what they were after. Well, to be fair, this was before Crawford was answered. The questions were asked were to determine whether this was an excited utterance and the questions that we would like to know now were, what did you do for your safety? How were you worried? What were you, that was not an issue that was not asked. Well, I'm not, I'm not sure that policemen should read Crawford before they perform their, their peacekeeping duties. No one questions the right of the police to ask these questions and to use the word either happens or happening or happened. The question is whether the answers are later admissible. Those are two different inquiries. Correct. And I was simply saying the record would have been relevant. And, of course, Crawford rejects reliability as a criteria. Yes. Yes. So our position here is that you cannot evaluate an ongoing emergency from hindsight. When police, you know, arrive on a scene and find a wounded man bleeding, they don't know the circumstances until they can find out what happened, who did it, and where did it happen, and try to assess the risk of harms, as you said in Davis, to themselves, the victim, and to others. But what does that have to do, we're back to the reliability test, really, because they didn't do anything wrong. They were trying to assess the situation. But that's what they do when any report of criminal activity occurs. That's a different inquiry than the inquiry of why should that statement be permitted to be introduced at trial. It goes to the very essence of reliability. Was the statement made under circumstances that would suggest an intent to testify? That's really what you're getting at, isn't it? No. No. Well, you are, because you're trying to pigeonhole yourself into an ongoing emergency to suggest that in those situations, whatever the person is saying is okay, because it was done to assess an emergency situation and not done for purposes of catching somebody, primary purpose of catching somebody. Which is what this Court said in Davis, and said that that was not related to reliability, but to formality there, and that that was not a formal thing akin to magisterial examinations. We're not trying to question or in any way change the test already set forth by this Court in Davis. We agree with that test. We simply disagree with the application by the lower court of that test here and the limitation it put on it. Ginsburg. So are you saying that the rule would be that whenever the perpetrator may be in the scene, the police are pursuing an urgent, an emergency situation rather than trying to find out what had the nature of the crime? We are not saying that any time there is a perpetrator at large, it is automatically an ongoing emergency until that person is caught. What we are saying is that preliminary inquiries on the scene to try to determine who the perpetrator is and where it might be would be non-testimony. For all crimes or only for shooting crimes or knifing crimes, for explosions, what kinds of crimes would qualify? I think, obviously, violent crimes raise ongoing emergencies, emergency situations more than others. There could also be contexts in which it would apply to other crimes. So at least whenever the police come upon somebody who has been the victim of a violent crime, whatever interrogation they conduct could plausibly be to make sure that the person is not still nearby, and that testimony will always be admissible. But is preliminary questions designed to assess the risks to themselves, the public or the defendants? No, no, no. It's not designed to assess the risks. You don't know what they are designed to do. Objection. These policemen didn't say we are assessing the risks. They just asked the questions. And that's what's going to happen in future cases. And you are saying whenever policemen come upon a victim of a violent crime and said, who did it, what's his name, all of that will always be admissible, because they could be assessing the risk, right? I think if the context shows that's the primary purpose, then, yes, that will often be the case. What do you mean? How could it possibly be admissible? First, there has to be a degree of formality, as the Court held in Hammond, sitting in the kitchen. And second, it has to satisfy State hearsay tests. So unless it's an exception to the hearsay rule, it is not admissible. Well, here, for instance, it was admitted as an excited utterance. Well, of course there are exceptions. There could, in fact, be a co-conspirator exception. There could be a dying declaration exception. But what we're talking about is whether the Constitution keeps it out, even though State law, because, say, it's a co-conspirator exception, would permit it in. So the answer is no. It's not the case that whenever you come across a victim of a crime and ask him questions, it's going to be admissible. It depends, State hears the law, the exception, and whether there's a degree of formality as there would in Hammond. Scalia. Only when he's excited, right? Only when the victim who has been the object of a violent crime is excited. Or if State law doesn't apply and we're dealing with a Federal crime and Federal officers, right? And trial in Federal court. And in that case, what Justice Breyer just said would not apply. It's correct. And I understand. Breyer. It would not apply? There isn't a Federal hearsay rule? And there are not exceptions that you have to satisfy? I thought there were in my copy of the Federal Rules of Evidence. Yes. And I did misspeak. What I meant to say was that it would be non-testimonial, not that it would always be admissible. If you had the benefit of hindsight, I mean, this trial occurred before Davis. And so the prosecutor went on excited utterance. Would you have instead tried to make a case that this was a dying declaration? Absolutely. I'd like to reserve whatever time I have. Thank you, counsel. Ms. Kruger. Mr. Chief Justice, and may it please the Court. As we understand the role of Davis v. Washington, it is a role that focuses on the primary purpose behind police interrogation because it's designed for a particular purpose, not to provide a comprehensive definition of the term testimonial, but rather to identify those statements that are testimonial because they are made in response to police interrogation. And the objective primary purpose of that interrogation is to enable police to meet an ongoing emergency rather than to collect evidence for future possible prosecution. The statements that are given in response to that interrogation are non-testimonial. I would Would you distinguish between collecting evidence for a future prosecution and collecting evidence in order to pursue and arrest the felon? You distinguish those two? And you can say these policemen weren't collecting evidence for a future prosecution. They just wanted to know who the shooter was and where he was so they could go get him. Well, I think that it's Would that not be collecting evidence for a future prosecution? I think that there are often multiple reasons, particularly in the wake of a violent event like a shooting crime. But you say it has to be for the purpose of a future prosecution. Just in order to arrest and bring into jail the person who committed this crime, that doesn't qualify. I think that what would qualify under the Davis test is if police need to apprehend the person not for purposes of bringing the person into the criminal justice system, but rather to neutralize an ongoing threat that they present to the community at large, as is often the case when somebody has just proved themselves both capable When does that not exist in the case of a violent crime? When does that not exist? I think it makes a significant difference. There's a violent criminal out there. Justice Scalia, I think it makes a significant difference whether we're talking about an act of violence like a shooting, somebody who's used a weapon that's capable of inflicting deadly harm on multiple victims in a short period of time, or someone who's used their fists, like the alleged perpetrator. Okay. So if you use a gun, a knife, or a machine gun, whatever the victim says gets admitted into evidence, because the police could be not trying to get evidence, but just trying to safeguard society against the felon on the loose. I don't think that we would draw the rule that broadly, Justice Scalia. I thought that's how you just described it. Well, I think that in this situation, we have police arriving on the scene to discover a man who's been recently shot as it turns fatally. Yeah. They need to find out in that situation. Who did it? They need to find out who did it so that they can make sure that person isn't continuing to threaten other people on the scene. That's always the case. That's such a phony evasion of what the purpose of the testimonial rule is. That's always going to be the case, at least when there's a violent crime. Well, I think that's true. And you may as well take Crawford and throw it out in majority of serious cases if that's going to be your rule. I don't think that that's the case at all, Justice Scalia. I think it's actually very much consistent with what this Court said in Davis. It may very well have been that the subjective purpose of the 911 operator was also to bring the perpetrator in that case to justice. But this Court, I think, quite properly recognized that in an emergency situation, the attention of both law enforcement and the declarant is quite properly going to be focused on dealing with the emergency at hand and is not going to be made with a kind of focused understanding of prosecution. Scalia, the crime was ongoing in Davis when the woman was on the phone with the operator. It was ongoing. She was seeking help from the emergency that was occurring to her at that moment. There's nothing like that here. It's true that that is a factual distinction between this case and Davis, but we don't think that it's one that makes a dispositive case. Did the police know that that was the case when they began the questioning? Did the police know that this man was not on a rampage, that he was not going to act in self-defense when they came after him, that he was not taking hostages? That's correct. They had no way of knowing that. And neither, for that matter, I think it's important to emphasize, did the declarant. The fact that he was able to escape the scene and managed to drive himself six blocks away in no way indicates that he had any evidence. Scalia, will they ever know that? I mean, is that likely not always to be the case when you come upon a person who's been the victim of a violent crime? You could say it all the time. They don't. They didn't know where the offender was. So whatever this person says comes in as evidence in a trial. Well, I think it's important to emphasize that what we're arguing for is not a rule that would say as long as there's a violent perpetrator at large, as long as he's at large, any questions that police ask of potential people who have information about the crime will necessarily be non-testimonial. Our argument is a far narrower one than one that we think follows very closely from the principle articulated in Davis, which is where, when the primary purpose of the police interrogation is to obtain information that's necessary to enable them to meet an ongoing emergency. Well, how do you know that? Because they would ask the very same questions if what they wanted was testimonial evidence. So you can characterize that set of questions either way. What would lead us to pick one rather than the other? I think it's actually not the case, Justice Ginsburg, that they would have asked the very same questions. We know from reading the trial testimony that the officers, as they appeared on the scene in response to the police run of a man being shot, asked the same question over and over again, each officer, as they approached him, said what happened, where did it happen, and wanted to know how to recognize the shooter. So when they proceeded to the scene, they would know who they were dealing with and how to safeguard themselves. They weren't asking the kinds of questions. Kennedy, let's say that we agree with you that there was an emergency and the police were asking questions in order to mitigate the emergency. What would be the rationale for admitting the statement, then? Is it more reliable? Because if we say that, then we're undercutting Crawford, which says reliability is not the key. What is the reason for that? Is it because the police likely have less motive to manipulate the statements and to ask loaded questions? That in itself, it seems to me, is reliable. What's the rationale? Assuming we adopt your distinction, what's the rationale for the distinction? Well, you think that the principle that this Court announced in Davis, and we're asking the Court to apply again today, reflects two principles that underlie the two principles that this Court interpreted in Crawford. The first is that testimony is typically characterized by the kind of focused understanding by the declarant that the person is providing information for potential use in a future prosecution. The Petitioner in Davis, I would note, made an argument to this Court that whenever a person calls 911, they do so with an awareness that the information they provide may be used for prosecutorial purposes. But this Court rejected that argument because it understood, I think quite rightly, that there's a difference between providing that sort of information to law enforcement with a sort of vague awareness that that might be its potential use, and doing so with a kind of focused understanding that is characteristic of the testimonial statements this Court has so far identified, like Sylvia Crawford's stationhouse interview in Crawford, or Amy Hammond's interview with the police officer from the safety of her kitchen that resulted in the execution of a formal affidavit. Ginsburg. Do we look to the specific situation? I mean, all of the officers zeroed in on the victim. No one was looking around to see if anybody was lurking in the bushes. Then, as far as protecting the public, do we take into account that this was between 3.30 and 4.00 in the morning, when they're not likely to have been many members of the public around? Or do we just say, you find someone, looks like he's been the victim of a violent crime, doesn't matter whether the public's around or not, we — that's enough. A victim of a violent crime can be asked these questions. To take your first question first, Justice Ginsburg, I think that the trial testimony is not quite as clear on the question of what fears the officers had as, I think, the respondent has suggested in his brief. If you look at Joint Appendix, page 136, Officer Stuglin testified that he was, in fact, afraid for his safety when he got to the gas station. And I would note that all of the officers, when they left the gas station after EMS arrived, they proceeded immediately to the location of the shooting, the location that Anthony Covington had identified for them. When they got there, they took a tactical position, they waited for backup, and they did so because they were afraid that a shooter was in the house, and they wanted to proceed very cautiously in making sure that they neutralized the threat that shooter posed to the public safety, including their own. I think that in examining the exigencies of the situation, a court would be justified in looking at the circumstances in which the crime occurred and could very well take into account the fact that the crime occurred at 3 o'clock in the morning as opposed to 5 o'clock in the afternoon. But I think that we would expect any reasonable police officer to do precisely what the police officers in this case did, which was proceed directly to the scene, not use their interview with Anthony Covington as an occasion to execute an affidavit or an otherwise deliberate case. Roberts, but then you're saying that the focus is on the police officers. And after all, I mean, we're not saying police officers can't do this. We're just saying the testimonial aspects can't be admitted into evidence, or that's what your friend is arguing for. I still have trouble figuring out is the issue, the purpose of the interrogating officers, or the purpose and intent of the declarant. I think that the test that the Court set out in Davis is one that focuses on the purpose of the interrogation because of the limited context. And what do you do with the last sentence of Footnote 1? It's the one that says? In the end, it's the declarant statement that the Confrontation Clause requires us to examine. Right. We read Footnote 1 to be an acknowledgment that answers given in response to police interrogation do not constitute the universe of possible testimonial statements. The testimony can indeed be volunteered, as was Lord Cobham's letter, for example, in Sir Walter Raleigh's treason case. But in the end, Davis, I think, quite properly focuses on the primary purpose of the interrogation. Roberts. Thank you, counsel. Mr. VanHook. Mr. Chief Justice, and may it please the Court. When Anthony Covington made his statement to the officers at the gas station, not just once but several times, he reasonably understood that he was providing the police information as to events which had concluded a half-hour earlier at a location 6 blocks away, with an understanding that that information would assist the police in locating, apprehending, and potentially prosecuting the person he felt was responsible for his injury. I didn't hear the end part. In locating and incapacitating. Apprehending. Apprehending. Arresting. Potentially arresting. Something like that. If what keeps that out? I mean, assuming that a State law or the Federal rules of evidence admit it as an exception to the hearsay rule, why should the Confrontation Clause bar it? There is not great likelihood that, like Sir Walter Raleigh or Cobham's affidavit, it is going to be introduced, per se, into the trial as a form of evidence that there was no ---- why would we want to keep it out? That's the part that I do not understand. Well, certainly under the Federal Constitution. Federal Constitution. I think your answer, counsel, is that we decided that in Crawford, from which Justice Breyer descended. But I think you might have another. Suppose I think we did. But I think you might have another answer that I would like to hear. I'd like to hear your answer, because I don't think we decided it in Crawford. All right? Now is a good time to try to jump in, I think. Okay. The reason, Justice, that, Your Honor, that the Confrontation Clause is the fundamental ---- part of the fundamental law of the country. And what this Court, I believe, decided in Crawford and then applied to the situation in Davis and Hammond, is that where you have a statement from a witness to a police officer as part of a questioning, and that statement is the functional equivalent of testimony that witness would have given had he or she appeared at trial and been subject to cross-examination, then the admission of that statement at trial, even under hearsay exception, without cross-examination, effectively allows the police to present the evidence. Breyer, does it mean that the individual is thinking this may be used, there is a certain formality of the situation, it may be used at trial, or it may just happen to turn out? I mean, what is the relevance of the formality of the situation? When I looked into history, I thought, I'm not an expert in history, and I'm also I understand there have been situations where the Court's gone back to prior cases and looked at footnotes and said it doesn't express things precisely, clearly, and changed it a little bit. I think that that all could be open to us. So I want to know what the basic reason is that would justify keeping out, let's say, an investigation. There is an investigation of a crime, and a policeman comes across a confederate who makes some statements just generally that help the investigation. Therefore, it would come in as co-conspiracy, you know. Okay? What in the Constitution, what functional principle is there that says we should keep that out of court? Because I think what this Court said in Crawford and Davis is that is the primary test, that that is what our Constitution requires to allow the reliability, the believability, the trustworthiness of that evidence to be evaluated by a jury. We don't have a situation where we don't. Breyer. All hearsay? Now, all hearsay evidence, despite States or Federal rulemakers saying there are exceptions where the trustworthiness is sufficient, such as co-confederates, confederates. All that's wiped out by Crawford and the Connors? It would be wiped out if the statement at issue qualifies as testimonial under the test this Court announced in Crawford and Davis. That's what we said in Crawford, isn't it? Yes. Of course, what I'm looking for now is whether there's any sense to that. What is the constitutional rationale? I agree I joined Crawford, but I have to admit to you I've had many second thoughts when I've seen how far it has extended, as I've written. Well, I would have to say the constitutional justification of that is the reason why the right of confrontation is in the Constitution, where you had situation in English common law, as we said, where magistrates were allowed to go out, interview witnesses, come into court, and present their memory, their version of what the witness said as substantive evidence in the case, and the defense is not allowed to question or talk to the witness. Now, you've got just what I'm looking for. What I'm looking for is I can go into Blackstone a little bit and look back and see what this was after, was the problem of Sir Walter Raleigh's trial and the Marion judges, and now what I need is a line. Because if I can't find a line, then what we've done, which seems just as wrong to me, is suddenly bar virtually all hearsay, exception, evidence of which for 400 years, or 200 years anyway, there's been quite a lot in the courts. Well, I certainly don't think Crawford and Davis bars all hearsay. So what in your view is the correct line and why, most importantly, why? I believe this Court in Crawford and Davis correctly established that line. In a situation like this where it is a response of a citizen to questions from a police officer, you look primarily, as footnote 1 indicates, to the content of that statement. If it were established that this was a dying declaration and was made in contemplation of death, would it be barred by Crawford? Well, this Court certainly has suggested that in Giles, that a dying declaration might be an exception to Crawford as an exception that existed at the time of the framing. We don't have to deal with that question in this case because this is not a dying declaration. Sotomayor, I understand that, but assume for the sake of argument that it would be consistent with Crawford if it were a dying declaration, which the Court has suggested. What does that tell you about the understanding of the scope of the confrontation right at the time when the Sixth Amendment was adopted? Because a dying declaration may very well be testimonial under, is likely to be testimonial under the Crawford test. Yes, and I think a dying declaration, maybe a dying declaration as being in that situation is an indication. What's different about a dying declaration from all these other hearsay exceptions is that at the point the statement is made, it's an understanding that that witness is never going to be, will not be testifying, that there is no potential that that witness will appear in court in person. There's the police officers in any of these situations speaking to a witness, when a police officer arrives at the scene, they have no way of knowing what's going to occur much later in Crawford. Kennedy, I thought the rationale for dying declaration admissions was that they are inherently reliable. You can certainly question that, but I thought that that was the rationale that the Court gave. On your deathbed before you're going to meet the maker, you're not going to lie. I think that was the testimony. So it was a reliability component, correct? That's true. And I think that's also the background of most hearsay exceptions, is that for the witness, there is a reliability to that statement which excuses the absence of cross-examination if the witness is unavailable. Kennedy, but now suppose that there is a universe of instances that we can identify as questions in order to alleviate and stop an emergency to prevent a crime from becoming aggravated and continuous. Let's suppose we can have a universe of those questions. Yes. Kennedy, is there an argument that responses made for that purpose are more reliable? Is that what underlies the so-called emergency exception, do you think? I don't believe so. I don't believe that a statement by a witness that is a narrative of a question of evidence. Well, and of course, Davis certainly does not rest on reliability, or Crawford, rather, doesn't rest on reliability. No. But isn't that really the only way to explain the 9-11 exception? No, no. The 9-11, well, the fact that there's a 9-11. Isn't there a reliability component that underlies this, whether we like it or not? I don't believe so. I don't think that the fact that someone calls 9-11 and makes a report, whether they're talking about an ongoing situation or reporting a past event, makes that somehow inherently more reliable and they've used another medium. I think the distinction made in Davis is that the beginning of the 9-11 call that Ms. McCountry was making to the case was not a relating past event. It was a declaration of emergency. It was a call for immediate assistance. But isn't the reason we accept that is because it's reliable. It's an excited utterance. It's an account of an ongoing event. It's a contemporaneous observation. Therefore, it is reliable. I don't know. I don't think that was the basis on which this Court held it was nontestimonial. I think this Court held it was nontestimonial because it was not what a witness does during a trial. It was not. Ginsburg. Let's go back to this case. Yes, Your Honor. Excited utterance was the prosecutor thought that was his best shot and he prevailed, except that the Davis intervened. I asked Ms. Palmer, suppose we were back there at the trial and the prosecutor knew that excited utterance wouldn't work. Could he have raised dying declaration? She said, absolutely, yes. So my question to you is just assume that we should hold the confrontation clause is applicable. Shouldn't the prosecutor then have a chance to say, well, if I had realized that, I could have made a dying declaration plea here so that it would be only fair to allow the prosecutor to try to establish that this testimony was a dying declaration? Well, in this case, when the initial attempted admission of this evidence at the preliminary exam, when there's a met a hearsay objection, the prosecutor at that point argued that it was admissible under Michigan evidence rules as either an excited utterance and or a dying declaration. He did argue a dying declaration. Well, they argued a dying declaration. The judge sustained the objection and said you've not established the foundation for either one of those. The prosecutor at that point established a foundation solely for excited utterance. The judge ruled the evidence admissible and specifically said admissible only as excited utterance. At that point, the prosecution abandoned any attempt throughout the State court proceedings to say this was a dying declaration. And that was in the pre-Davis world, but do you think the prosecutor would have abandoned that effort had he been informed about Davis? I don't know. I don't know what the reason was. Mr. Van Hoek, what is the basis for your concession that a dying declaration is an exception from the Confrontation Clause? It is an exception from hearsay for certain, but from the Confrontation Clause? I'm not — if I meant — if you took what I said as a concession, what I said is that this Court — You conceded it. It's been the whole basis for Justice Ginsburg's subsequent interrogation. My question was based on it's an open question, because we have said maybe dying declaration. I thought it was an open question only where the defendant has affected the death of the person who has made the dying declaration. I don't know of any cases that allow a dying declaration in over a Confrontation Clause objection. If you took my answer to the prior question to say that I conceded that, I'm not saying that. I'm saying when I was first asked the question about dying declaration, I pointed out that this Court in Giles indicated that that may be an exception to the Confrontation Clause. And I agree. And it wasn't in Giles. It wasn't in any way that the purpose of the killing was to get rid of the witness's testimony. Giles made the statement, maybe dying declaration is an exception to our corporate jurisprudence. Yes. And as I said, this Court has not reached that question directly, and there's no need to reach that question in this case, because this is not a dying declaration case. Scalia, if it hasn't been reached, if it is not an established exception to the Confrontation Clause, there is no basis for saying, therefore, the Confrontation Clause pertains only to reliability. It pertains to the opportunity to cross-examine. And reliability exceptions are what we used to do under Reynolds. If it was reliable, we'd let it in. And the mere fact that it's reliable as a dying declaration instead of reliable as something else ought to have nothing to do with the Confrontation Clause decision. Oh, I agree. I'm not going to go. Whether you agree or not, we said it was an open question. Yes. It has not been decided. Can there be a situation in which the primary purpose for a statement or for the question that elicits the statement is to respond to an ongoing emergency rather than to gather evidence for subsequent use in a legal proceeding when the statement relates to something that has occurred, perhaps just a few seconds before, but it relates to something that has occurred as opposed to something that is occurring at that very moment? I think there are situations where the police are coming in and asking questions, is there a threat here? Is there someone here who is threatening you? Is there someone here who is coming to threaten you or threaten other people? They may be able to get some background information to put that in context. But we don't have anything like that in this case. But I understand. But we need to know where to draw the line. So you can see that the line is not between a statement about he's hitting me with a baseball bat as opposed to he just finished hitting me with a baseball bat and has headed out the door. That's not the way the line is drawn. I think the line would be drawn if those were the only statements, he's hitting me with a baseball bat versus he just hit me with a baseball bat and he just left. I think the line is clearly drawn in Davis between the hitting me with a baseball bat being non-testimonial. Alito, I really would like a clear answer to this. Can there be an ongoing emergency where the statement relates, where the statement recounts something that has occurred, not something that is occurring?  Alleging that there's any current, ongoing, imminent danger, if the witness only gives a statement that relates to past, completed events, then it's not a showing of an ongoing emergency. Roberts. Roberts. So what do you do with the statement, the guy in the gas station shot me? Is that purely past or is that an ongoing emergency? That statement standing alone, I would say that that's passed, purely passed. Even though the guy in the gas station is still there with a gun. The police are within range. Referring to a specific person? Yes. I mean, that strikes me as something that happened in the past, he shot me, but at the same time demonstrates an ongoing emergency because he's right there and he might shoot you. I'm suggesting the line you proposed to Justice Alito doesn't work. Well, I would say, I don't think that there's been a lot of discussion of verb tense and past tense. I don't think that is the determining factor. It's certainly important and certainly a relevant consideration. But the guy in the gas station is present, it's not past. He's making an assertion, the guy who is now in the gas station shot me. The shot me is past, but he's asserting that the person is now in the gas station. That's a statement of a present fact. Yes. And I think if you look at all of the circumstances together, it's a ‑‑ and going to the primary purpose is, is the witness declaring some type of emergency, some sort of imminent harm, and requesting the police to render assistance, to alleviate that, to protect him, him or her? Well, suppose they get a 911 call. There's a man who's just been shot on the corner of Fifth and Main. They go to Fifth and Main, they find a man there, he's shot, he's bleeding profusely, he's in shock, and they know nothing more about what's happened. And they say, well, what happened? Well, he shot me. Who shot you? Well, it's John Jones. Now, what about that? I would say that's our case, and I would say that was testimonial. Well, the police under those circumstances don't know whether John Jones is going on a shooting spree. This is just the first of numerous victims. Maybe it's a gang fight. He's shot one member of an opposing gang. Now he's going to go shoot another member of an opposing gang. How can they ‑‑ how can you answer that question? What's their primary purpose there? I just don't understand it. Well, I would ‑‑ in that situation, nothing about the Davis rule, nothing about the Confrontation Clause precludes the police from taking that information and asking those further questions. It's down here. But you were the one that drew the line between a past event and an ongoing event. Suppose the sniper says, I've shot you now, and I'm going to shoot three other students, goodbye. That's a past event. But if the statement is made to the police that a sniper has said he's on the verge of shooting other people because he just shot someone, I would say that's certainly a declaration of an emergency and certainly would be nontestimonial under the test of Davis. Breyer, is there any ‑‑ I'll try this. I think you're just ‑‑ you don't like my ‑‑ where I'm coming from, but ‑‑ and so you might not have an answer to this. But in my mind, I see a line, and that line is dividing what I think of as the Confrontation Clause, Sir Walter Raleigh situation, which I have in my mind as people going into a room and saying, now, write out your testimony, and they write it out in the form of an affidavit or they send in a letter and they say bye, and then they walk next door to the trial and introduce it. I mean, that's Walter Raleigh in my mind. And then on the other side of the line is evidentiary rules that are basically in State cases run by the State. And they sometimes let hearsay in and they sometimes don't, and they make reliability, etc., judgments in developing their decision as to how hearsay exceptions will work. Okay? Now, why don't I like emergency to draw that? The reason I don't like the word emergency is I think police do lots of things other than handle emergency and develop testimony. There's a range of things that you would describe as investigating the circumstance. There's no danger. There have been a string of robberies. They go around and ask the grocery store people and everything, what happened? Now, I don't know why we should keep out evidence that, say, is given in that situation by a confederate. It turns out he was the assistant. Why? And if I don't like that, I don't like the emergency rule as doing the work there, and I'm looking for something else. Now, you have my whole train of thought, and if you want to say, Judge, there's nothing but the emergency rule, you're perfectly free to say it. Do it. There's nothing but the emergency rule. I think that when the police are investigating a reported crime and getting statements from witnesses, whether the victim or another witness. They're not. They're just asking. All right. Yes. Well, they're investigating. They're seeking information in which they will do their job, which is to go try to arrest someone and see what the situation is. And they're getting narratives of past events from witnesses, and they're acting on that. And nothing about this rule prevents them from doing that. But the admissibility that for them to be able to come into court, and they alone to come into court and say, this is what this witness told me, and this is what this witness told me, and this is what this witness told me, and by the way, defense counsel, those witnesses aren't going to be here today, and you're not going to be able to ask them what they meant by that or whether they were telling the truth. No, Mr. Bryant at this trial was never able to question Mr. Covington. Breyer. Yes, yes. But in the past, that situation you're describing arose only where there was a hearsay exception. I would imagine most likely it would be the case of a Confederate, someone who was part of the conspiracy. So if I think that that's going to be the case that probably will be admissible where this has bite, and there may be some others, excited utterances, maybe another. Dying declarations are probably few and far between. Baptismal certificates. But the line this Court drew in Crawford and Davis. I know they did. And what I'm saying is I'm finding that it seems to me that that line, if taken literally, would keep out exceptions to hearsay testimony which have been well established in the United States for 200 years. Baptismal certificates, statements of birth. I don't believe that. Confederates is the one I come back to. Those examples you just gave, Baptismal certificates, are not statements made during police questioning. If we're talking about a citizen.  Okay, okay. I forgot. The difference that's made in Davis is that the definition of testimonial is not across the board. A statement. I guess it depends on what you mean by in the past, as Justice Breyer put it. Undoubtedly, under the regime of United States v. Reynolds, which was, what, 25 years old? Roberts. Roberts, I'm sorry. Roberts v. Roberts. Roberts, which Reynolds was the Mormon case. Which was about 25 years old or so when Crawford was decided, yes, hearsay was your protection and that was it. But if by what you mean is in the past, Crawford examined the past, and its conclusion as to what the past said is quite different from what Justice Breyer now says, although he joined Crawford. Yes. As you said, in Crawford, this Court looked at that and thought that the protections of the hearsay rule and the focus under the Roberts standard of whether a statement fell within a firmly established hearsay rule was not sufficient under the Constitution, under the Confrontation Clause, to alleviate the fact that there's no cross-examination. Breyer, I mean, like many cases, there is language that can take us far afield from the subject matter before us. And I will admit that I did not foresee the scope of Crawford. So I'm really asking about that scope and, in particular, whether, looking to the past or to reason or to whatever you want, there is a good reason for keeping out the testimony of, say, a co-Confederate, a co-conspirator, where it was elicited, not with intent to introduce it into the courtroom, but it was elicited in the course of an ordinary investigation of a crime. Well, I have to go back to my answer that the Confrontation Clause is the primary law of the country, not State hearsay evidentiary rules. Many of the examples of co-conspirator exceptions is not going to be applicable in many cases because those statements aren't made to police officers. They're made between co-conspirators in the course of a conspiracy. That's the foundational requirement. It's not going to eliminate hearsay rules. Statements made to private citizens, statements made in a lot of different circumstances are still going to be evaluated solely under hearsay rules because they're not going to be defined as testimonial, as they're not the product of a police questioning. Alito, I'm still trying to understand your conception of the scope of the ongoing emergency doctrine. Would it be fair to say that your idea is that the police have to have specific evidence that there is an immediate threat of physical violence that they want, they need to respond to in order for the ongoing emergency doctrine to apply? And in a case of doubt, they can't do it. So if they don't know whether there is an immediate threat or not an immediate threat, then that doesn't fall within that exception. That's your idea? My position is that where the witness has not provided any information to the police indicating that there's an immediate threat, either volunteered to the police or in response to questions from the police saying, is there a threat, in this case, no questions were asked, where is Rick? No questions. Scalia, you don't say they can't do it. No, not at all. They can always ask the questions. The only issue here is not whether they can ask the questions, but whether, after they ask them, the answers can be introduced at trial. Yes. And if the answers, no matter what questions they ask, if the answers all are a narrative of past events, then that qualifies as testimonial, because it is the equivalent. I thought you just said that that wasn't the test, past versus present. Didn't you say that about 10 minutes ago? It's not the difference between something that's taking place and something that has taken place? No, no. I think my answer was that if the witness is declaring an emergency and telling the police that there is a crime. A witness has to say there's an emergency? Not in those words, but in comparison to what Mr. Davis said, is that he's beating me up. There's a report of shooting at a school, and the police go and they find two students lying on the ground. One is dead and the other is severely wounded, and they ask the one who's wounded, who did it? It's John Jones. Now, is that an ongoing emergency? No. No? No. Well, if that's not an ongoing emergency, what would be an ongoing emergency? Well, it would be a statement from the witness at that point of the police officer who's asking him, is John Jones here? Is he threatening me? Do you know where he is right now? Do you know what he's intending to do? And the answers are, yes, he has a gun, he's right over there, he's going to shoot someone else, he said he was going to shoot someone else. That's different. They have to have very specific information. Because the prosecution or the Petitioner's position here is that the situation itself, standing alone. What if there are three students who have been shot, four students who have been shot, but nobody says, well, I think he's still in the building, he may have an interest in shooting some more students? Well, certainly if the police come upon the scene and there's multiple students who have been shot, you would think that if their primary purpose, if the primary purpose of questioning the witness is to determine whether it's an emergency, they're going to ask those questions. Scalia. Would they ask his name? God, it's really important for us to know, four students on the ground, what's the name of the guy that did this? That's not the emergency. They'd say, where is he? Of course that's the emergency, because how are they going to find the person that they're looking for if they don't know who it is? What if he's thrown away his gun? Of course, if they come upon him and he has his gun in his hand, then it's not a question. What if he's disposed of it? They have to know who to go for. And they can ask all of those questions. As Justice Scalia said, there's nothing in the — in this Court's opinion in Davis or nothing in my position that prevents the police. But I still — I'm totally puzzled now as to what you — when you think there's an ongoing emergency and when there isn't. I think there's an ongoing emergency, that a statement relates — that would become non-testimonial relating to an ongoing emergency when there's some indication from the statement made by the witness that such — that there's some immediacy, there's some question. It has to be made by the — by the declarant. It can't be inferred from the circumstances. No, I don't think just from the circumstances, because if you can't. Roberts, if he says the principal did it, it's 10 o'clock in the morning, you assume the principal is at the school, and he says the principal did it, you can infer from the circumstances that he's referring to an ongoing emergency. I don't agree. I don't agree, because if that's the case, if any report, as Justice Scalia, I think, said previously, any report of a past crime certainly raises the potential that a subsequent crime will occur, and if that's the case, then — Roberts, it's quite different than saying, you know, this happened with some guy driving by or something like that. If he says the principal did it, it's at 10 o'clock, it's in the school, that suggests to be more — not that the dying student or the wounded student wanted to make sure the principal was convicted, but that there's an emergency, something's happening. Well, again, I think that if all it is that the principal shot someone before, that basically is, I think — Sotomayor, you don't think there's a danger implicated by coming on to the lawn of a school and a student's there and says, the principal shot me inside. You don't think that that suggests an ongoing emergency, that the principal's still inside with a gun? Well, if they ask those questions, are the principal still inside, and there's an indication that — Oh, no, no. You don't want them to have to go through, you know, a whole list of questions while the student's there dying and the principal is inside the building shooting people. Did he shoot you because he had a grudge against you, or is he just shooting kindly and he says he shot me? No, I'm not taking the position that they have to go through a whole list of questions before they can do anything. If they go in that situation and a student says the principal shot someone, certainly nothing about the Davis rule stops them from immediately running into the school and determining if there's a situation there. Thank you, counsel. Ms. Palmer, you have two minutes remaining. I would just like to reiterate that the underlying principle, as this Court has said repeatedly in Crawford and in Davis, is formality, and that's what the purpose of any inquiry should be in looking at the scene, whether there's an emergency or not or a declarance view or not. It all comes down to the formality akin to a magisterial examination. And I would also say that there's a formality in the case of the Davis case. Sotomayor, let's go to formality. It can't be that you arrive at a scene of a crime and everything a victim tells you is admissible. There has to be some emergency. That's what we've said. Right. Correct? So the issue here is how do you define that dividing line between emergency and non when the police officers are just asking questions that by their nature are always going to be testimonial because they're going to use or try to use whatever is said later. So in discerning the primary purpose, I think your adversary is saying you can't go by what the police officer are asking because they're going to be asking dual motive always. You have to look to what the declarant tells you. And is he or she telling you something that suggests an emergency? Well, that's really the difference between the two of you, I think. Well, even if you take that view, that it's the declarant's purpose, the objective review that controls, I think here it's difficult to see how Covington's purpose could have been to provide evidence any more than the 911 call in Davis. I mean, he was in shock from a bleeding wound. He didn't call the police. They came to him. You know, this wasn't even a 911 call where he sought them. They came to him. It's not clear who called, but it was not him. So even taking it from his point of view, it's difficult to see here how the purpose would have been anything other than, as he said, when is EMS coming to help me. I don't understand what you're saying. You mean he has to intend to provide evidence that he knows will be used at trial? I don't think that's the case. I don't agree with that. He's intending to accuse somebody. I think here he's intending to seek help because he's been mortally wounded. Thank you. Thank you, Counsel. The case is submitted.